**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LEE STILLEY,  :
 :
    Plaintiff,  :
 :
v.  : CIVIL ACTION NO.
 : 1:10-CV-40-RWS
CITY OF FOREST PARK,  :
GEORGIA, *et al.*,  :
    Defendants.  :
 :
 :

## **ORDER**

This case comes before the Court on Defendants' Motion for Summary Judgment [32]. After a review of the record, the Court enters the following order.

## **I. Factual Summary**

Plaintiff Lee Stilley, a diabetic, was hired in 2005 by the City of Forest Park ("City") at the age of 44 to serve as a firefighter/paramedic. Def.'s SMF, Dkt. No. [32-2] at ¶¶ 3, 5, 11, 14; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶¶ 3, 5, 11, 14. While there is some dispute about the time of the diagnosis, by 2006 Plaintiff was diagnosed with proliferative diabetic retinopathy, an eye condition

which Defendants maintain affects his ability to carry out his firefighter duties. Def.'s SMF, Dkt. No. [32-2] at ¶¶ 6-8; Pl.'s Resp.SMF, Dkt. No. [42-1] at ¶¶ 6-8.

On March 8, 2007, Defendant Chief Eddie Buckholts transferred Plaintiff from the C Shift to A Shift due to Plaintiff's knowledge and experience as a paramedic. As a result of the transfer, Plaintiff was the most experienced firefighter/paramedic on the A Shift and was then supervised by Defendant Captain Major Oliver. Def.'s SMF, Dkt. No. [32-2] at ¶ 29; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶ 29.

On June 9, 2007, Buckholts received an inter-office memorandum from Oliver which detailed that Oliver had concerns about possible health issues the Plaintiff may have which would affect his fitness for duty. Ex. 27, Dkt. No. [32-30]. Somehow–and the how is disputed–Buckholts told Dr. James Augustine, the City's Medical Advisor, about the letter, and Augustine advised to apply the National Fire Prevention Association Standard 1582 on Comprehensive Occupation Medical Programs for Fire Departments ("NFPA standard")[1] to

---

[1] While Plaintiff worked for the City, the City never had adopted the NFPA standard for any official use and prior to Plaintiff, had never used the standard to evaluate any employee's fitness for duty. Pl.'s SMF, Dkt. No. [42-1] at 24.

determine if Plaintiff's diabetes and related diagnoses affected his ability to work for the City. Def.'s SMF, Dkt. No. [32-2] at ¶¶ 44-46; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶¶ 44-46. Augustine recommended that the City identify a physician who would be qualified to conduct an evaluation and apply the standard. Def.'s SMF, Dkt. No. [32-2] at ¶ 49; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶ 49.

The City chose Dr. Morgan, who then referred the Plaintiff to his own ophthalmologist–Dr. Martin–to complete a follow-up on the diabetic retinopathy issue. Def.'s SMF, Dkt. No. [32-2] at ¶¶ 50-52; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶¶ 50-52. Dr. Martin wrote on July 19, 2007 that Plaintiff had a recent hemorrhage in his right eye which had altered his vision from 20/30 to 20/200, but Dr. Martin thought Plaintiff would be able to "retain stable vision for some time." Martin also confirmed that Plaintiff suffered from "proliferative retinopathy." Ex. 33, Dkt. No. [32-36]. As a result of this response, Dr. Morgan wrote Buckholts and advised him that with Dr. Martin's diagnosis, the Plaintiff would fail the NFPA standard as having a Category A medical condition. Ex. 34, Dkt. No. [32-37]. Dr. Augustine confirmed this finding. Ex. 35, Dkt. No. [32-38]. However, before making an employment decision, Buckholts urged the

3

Plaintiff to seek clarification from Dr. Martin on whether he could meet the NFPA standard. Def.'s SMF, Dkt. No. [32-2] at ¶ 55; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶ 55.

On August 20, 2007, Dr. Martin wrote Buckholts again and told him that Plaintiff's eyesight in his right eye had improved to "20/60 with pinhole to 20/50. . . Lee's ophthalmic condition (diabetic retinopathy) is stable overall, and the best that I have seen in a while. Therefore, I see no reason why he would not be able to perform his duties as a firefighter." Ex. 36, Dkt. No. [32-39]. But because Dr. Martin did not address the NFPA standard, Buckholts sent Stilley back to Dr. Martin with the standard in hand. Def.'s SMF, Dkt. No. [32-2] at ¶ 57. Following review of the standard, Dr. Martin wrote back "[o]n the basis of this, he can drive a vehicle and I think he is more than capable of performing almost any job. I note in your regulations that he can have no higher grade of diabetic retinopathy than microaneurysms. His diabetic retinopathy is a higher (worse) grade than this, but I would seriously question the wisdom of this requirement." Ex. 37, Dkt. No. [32-40].

Based upon the statement that Stilley failed the NFPA standard, Buckholts brought Stilley into his office along with the City Personnel Director

4

Christine Terrell to discuss any other jobs within the City that Plaintiff might be able to do. Def.'s SMF, Dkt. No. [32-2] at ¶ 61, 11; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶ 61. Plaintiff then resigned at age 47, although Plaintiff maintains he was constructively discharged. Def.'s SMF, Dkt. No. [32-2] at ¶ 62; Pl.'s Resp. SMF, Dkt. No. [42-1] at ¶ 62.

## II. Discussion

### A. Abandoned and Unopposed Claims

As an initial matter, Plaintiff has expressly abandoned the following claims: Count 1 (ADA and ADAAA); Counts 10 and 11 (§ 1983 predicated on the First Amendment); and Count 13 (tortious interference with business relations). Pl.'s Br., Dkt. No. [42] at 2. He has also failed to respond to Defendants' sovereign and official immunity defenses to his state-law intentional infliction of emotional distress claim. See id. at 20-23. Therefore, Counts 1, 10, 11, 12, and 13 are **DISMISSED**.

### B. ADEA

The ADEA represents a comprehensive congressional scheme designed to prohibit and remedy employment discrimination based on age. Plaintiffs who file ADEA claims are required to prove that "age was the 'but-for' cause of the

employer's adverse decision." Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S. Ct. 2343, 2351 (2009). Even after Gross, the Eleventh Circuit has continued to use the McDonnell-Douglas burden shifting analysis for circumstantial ADEA claims. See Anderson v. Embarq/Sprint, 379 Fed. App'x 924, 929 (11th Cir. 2010); Horn v. United Postal Servs., Inc., 433 Fed. App'x 788, 793 (11th Cir. 2011). That scheme requires a plaintiff to first prove his *prima facie* case, which requires him to show that he was: " (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual."Anderson, 379 Fed. App'x at 929. "Alternatively, even if a plaintiff is not replaced by a member outside his protected class, he may still satisfy the last prong of the *prima facie* case requirement by identifying similarly situated comparators outside of his protected class who were treated more favorably." Horn, 433 Fed. App'x at 792.

To address the replacement prong of the McDonnell-Douglas test, Plaintiff states that "Defendants have offered no proof Plaintiff's replacement on A Shift was an employee whose age would qualify for protection under the ADEA." Pl.'s Br., Dkt. No. [42] at 18. However, Plaintiff clearly misstates the

6

burden. It is Plaintiff who is required to produce evidence of the younger individual. See Anderson, 379 Fed. App'x at 929 (finding that because the plaintiff did not produce evidence of a younger employee, *inter alia*, the defendant was entitled to summary judgment on his ADEA claim). As well, the only affirmative evidence Plaintiff puts forward on this issue is to direct the Court to three pages of Defendant Oliver's deposition where he guesses whether other employees on Shift A are older or younger than the Plaintiff–not older or younger than 40, the statutorily relevant number. See Pl.'s Br., Dkt. No. [42] at 19. And there is no evidence that any of these people actually replaced the Plaintiff. This evidence is neither compelling nor probative.

Finally, the Plaintiff fails to point to any under-forty similarly-situated comparator as evidence of discrimination. Since Plaintiff has not met his *prima facie* case, Defendants' Motion for Summary Judgment as to Count 2 is **GRANTED**.[2]

### C. Retaliation under the ADA, ADAA, and ADEA

Defendants next move for summary judgment on Plaintiff's retaliation

---

[2]The Court notes that the individual Defendants are also not subject to the ADEA claim as they are not "employers" for statutory purposes. See Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995).

7

claim. In his Complaint, Plaintiff alleges that "[i]n retaliation for Plaintiff's filing of his EEOC charge, Defendants refused to release his 2007 training records so that his various State certifications lapsed and he was suspended from his fire fighter job at that time. As a result of this retaliatory conduct, Plaintiff lost income from his employment as a fire fighter while suspended." Cmpl., Dkt. No. [1] at ¶¶ 26-27. This is the sole factual basis alleged for retaliation.

In their motion for summary judgment, Defendants fully attack this factual basis for retaliation, arguing that records are only submitted on a calendar basis and that employees who leave must submit their own training records which they can obtain from the City on request. Def.'s MSJ, Dkt. No. [32-1] at 48. In response, the Plaintiff does not challenge retaliation based upon Defendants' records-release failure–leaving it unopposed–and instead argues that "Plaintiff directly engaged in protected expressions when he on multiple occasions complained to Defendant Buckholts and the Personnel Director Christine Terrell regarding the discriminatory treatment he suffered at the hands of Defendant Oliver." Pl.'s Br., Dkt. No. [42] at 11. However, the failure to

8

AO 72A
(Rev.8/82)

allege this new basis in his complaint, or to amend his complaint, acts as a complete bar.

In Thampi v. Manatee County Board of Commissioners, 384 Fed. App'x 983, 988 (11th Cir. 2010), the Eleventh Circuit recently confirmed that even under the liberal employment pleading standard of Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002),[3] "[a] Plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." There, the plaintiff alleged a retaliation claim "for being a witness" in his complaint. However, at summary judgment, the plaintiff attempted to predicate his retaliation claim on "the filing of his lawsuit." Id. The Eleventh Circuit ruled that this conduct was improper, and that without amending his complaint, the district court's decision not to entertain the new basis was correct. Id.

This is an analogous scenario. Plaintiff plead a retaliation claim based upon the filing of his EEOC charge, failed to oppose the motion for summary judgment as to this claim in his Response Brief, and now seeks to assert a separate basis for retaliation in his brief. Such conduct thwarts pleading's notice

---

[3] In Swierkiewicz, which was pre-Twombly and Iqbal, the Supreme Court held that an employment-discrimination plaintiff does not need to plead all of the elements of his *prima facie* case so long as the Defendant has "fair notice of the basis for petitioner's claims." 534 U.S. at 514-15.

9

requirement and will not be entertained. Because Plaintiff has abandoned the only retaliation ground which he has plead, see LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."), Defendants' Motion for Summary Judgment as to Count 3 is **GRANTED**.

### D. Harassment

In their motion for summary judgment, the Defendants assert that "[t]o the extent that Complaint may be considered to have raised a claim of unlawful harassment, based either on Plaintiff's age or his disability, that claim has no merit." Def.'s MSJ, Dkt. No. [32-1] at 51. The Court finds that, like the new retaliation claim, Plaintiff also did not plead a claim of harassment.

In his Complaint, Plaintiff alleges in his facts section that "[f]rom the outset of his reassignment, Plaintiff was ridiculed and harassed by Captain Oliver and the other firefighters under Captain Oliver's supervision due to his age and status of a diabetic." Cmpl., Dkt. No. [1] at ¶ 13. As well, under Count 3–retaliation–Plaintiff states that "Plaintiff engaged in statutorily protected activity in relation to the treatment and harassment by Defendants Buckholts and Oliver related to his disability and age." Id. at ¶ 39. These are the only references to harassment in the Complaint; Plaintiff did not bring an actual

10

AO 72A
(Rev.8/82)

count of harassment. Therefore, like retaliation before it, Plaintiff has not sufficiently plead harassment to give the Defendants notice of both the claim and the conduct which underlies it.

As well, it is innocuous that the Defendants preemptively addressed the issue in their motion. See Thampi, 384 Fed. App'x at 988 (rejecting Plaintiff's argument that because the defendant responded to the merits of the claim the district court should have entertained it). The Court finds that Plaintiff never mounted a claim for harassment, and Defendants' Motion for Summary Judgment is **GRANTED** as to that issue.

### E. Constitutional § 1983 Claims

#### i. Claims against Defendants Oliver and Buckholts in their Official Capacities

As an initial matter, because Plaintiff has also brought claims against the City of Forest Park, all claims against the individual defendants in their official capacities are duplicative and must be **DISMISSED**. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local

11

government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).").

### ii. § 1983 Claims against the City

Defendant City of Forest Park next moves for summary judgment on all § 1983 claims, asserting that under Monell v. Department of Social Services, 436 U.S. 658, 691 (1978), the City is not liable for the alleged actions of the individual defendants in this case. Local governments may not be held liable pursuant to section 1983 on a theory of respondeat superior. Id. Instead, local governments may be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694; see also Mandel v. Doe, 888 F.2d 783, 791 (11th Cir. 1998). " Local governing bodies (and local officials sued in their official capacities) can, therefore, be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 659.

12

Here, Plaintiff has not put forward any evidence that the City has a custom, policy, or practice which the individual defendants were carrying out. Instead, Plaintiff argues that because Defendant Buckholts was a "final policymaker" in regard to Plaintiff's constructive discharge, the City is liable for his conduct. Pl.'s Br., Dkt. No. [42] at 24. However, a municipal officer like Buckholts is not a final policymaker when his decision is subject to meaningful review by an administrative actor, as seen here. See Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997) ("This Court's post-Praprotnik decisions have consistently recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review."). The City of Forest Park has a Grievance Process which allows for an administrative hearing following:

> (A) Loss of the employee's job, accrued pay, or other tangible economic benefits, . . .
> (C) Claims of unlawful discrimination, . . .
> (D) Claims of retaliation, reprisal or coercion for filing a grievance, or appeal,
> (E) Claims of other unjust practices which are unlawfully based upon the employee's race, color, creed, religion, national origin, age (provided the employee is at least 40 years old)[,] gender, disability (providng the employee is qualified for the position which he seeks or holds), status as a member or veteran of the

13

> Armed Forces of the United States;
> (F) Claims of unlawful coercion, reprisal, or discrimination against
> an employee based upon the employee's exercise of a right
> protected by, or a duty required under the statutes, regulations,
> ordinances, or Constitutions of the United States, Georgia, or the
> City of Forest Park.

Ex. 49, Dkt. No. [50-1] at 4. As Plaintiff's claims qualified under many if not all of the above sections, Buckholts could not have been a final policymaker, and the City cannot be liable for his actions. Therefore, all § 1983 claims against the City (Counts 5, 7, and 9) are **DISMISSED.**

### iii. Equal Protection Claims

Defendant Buckholts and Oliver also move for summary judgment on Plaintiff's equal protection claims based upon age and disability. When bringing claims based upon age and disability discrimination, the Supreme Court has ruled that rational-basis scrutiny applies. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83-84 (2000) (age); Board of Trustees v. Garrett, 531 U.S. 356, 367(2001) (disability). "Under rational-basis review, where a group possesses distinguishing characteristics relevant to interests the State has the authority to implement, a State's decision to act on the basis of those differences does not give rise to a constitutional violation. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between

14

the disparity of treatment and some legitimate governmental purpose." Garrett, 531 U.S. at 366-367 (internal citations and quotations omitted). "[B]ecause an age [or disability] classification is presumptively rational, the individual challenging its constitutionality bears the burden of proving that the 'facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" Kimel, 528 U.S. at 84. Finally, the Supreme Court has noted that, in the public employment context, a plaintiff cannot bring a "class-of-one" claim. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 594 (2008).

Plaintiff asserts as the basis of his equal protection claim that he "is the only employee in the City of Forest Park to have been terminated on the alleged basis of NFPA 1582." Pl.'s Br., Dkt. No. [42] at 25. He argues that of the other Class A medical conditioned firefighters, he is the only one who has ever had his fitness for duty questioned. Id. As a result, he argues that he has been discriminated against because of his specific characteristic–i.e., a class-of-one claim.[4]

---

[4] It is also worth noting that Plaintiff does not address his age as a basis for equal protection. Thus, that claim is deemed abandoned. LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion." ).

A class-of-one claim is improper in the public-employment context. Engquist, 533 U.S. at 594. In Engquist, the Supreme Court rejected Plaintiff's argument that employers may not be able to "irrationally treat[] one employee differently from others similarly situated," 533 U.S. at 597, but instead found that the Equal Protection Clause is only "implicated when the government makes class-based decisions in the employment context, treating groups of individuals categorically differently." Id. at 605 (emphasis added). As Plaintiff argues that he was singled out–or treated differently from other similarly situated disabled persons–Plaintiff's equal protection claims cannot stand and Defendants' Motion for Summary Judgment on Counts 4 and 6 is **GRANTED**.

### iv. Procedural Due Process

The individual Defendants last move for summary judgment on the procedural due-process claim. To support his claim, the Plaintiff solely states that the Defendants "violated Plaintiff's right to due process. As the constitutional rights were clearly established at the time of his conduct, they are not entitled to qualified immunity." Pl.'s Br., Dkt. No. [42] at 24. This argument both lacks evidentiary support and is unavailing.

16

"It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000). Thus, "'only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.'" Id. at 1330-31 (quoting McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc)).

In this case, Plaintiff was provided an administrative appeal scheme–which on its face appears to be adequate–that he failed to use. See Ex. 49, Dkt. No. [50-1] (outlining the City's appeal process). However, assuming that the procedure was flawed, the Court sees no reason why mandamus would not lie to compel the City to hold a hearing which satisfies the requirements of due process. Accordingly, because Plaintiff may seek a writ of mandamus under O.C.G.A. § 9-6-20, and because the mandamus proceeding would be an adequate remedy to ensure that Plaintiff was not deprived of his due process rights, Plaintiff has failed to show that inadequate state remedies were available to him to remedy any alleged procedural deprivations. Accordingly, Plaintiff

17

has failed to state a claim for a procedural due process violation, and Defendants are entitled to summary judgment on Count 8.

## III. Conclusion

Defendants' Motion for Summary Judgment [32] is **GRANTED**. The Clerk is directed to close this case.

**SO ORDERED** this   22nd   day of November, 2011.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)